UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DAVID GILLESPIE,**

    **Plaintiff,**

**v.**                                      Case No: 6:17-cv-635-Orl-41GJK

**CITY OF ORLANDO,**

    **Defendant.**

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss ("Motion," Doc. 10). Plaintiff filed a Response in opposition (Doc. 14). For the reasons set forth herein, Defendant's Motion will be granted.

### I.    BACKGROUND

Plaintiff, a white male, was originally hired by Defendant in October 2003 and resigned in August 2008 due to a reduction in force. (Am. Compl., Doc. 5, ¶¶ 2, 7–8). On or about July 10, 2011, Plaintiff applied for the position of Discrimination Investigator II with Defendant and was hired on or about October 2011. (*Id.* ¶¶ 9–10). Plaintiff claims that immediately after being hired, he was informed by the Assistant to Director/Human Relations Official, Patricia Newton, that she had re-posted the position because of Plaintiff's race.[1] (*Id.* ¶¶ 11). Newton subsequently became Plaintiff's supervisor. (*Id.* ¶ 13). Allegedly, Newton also assigned Plaintiff more work—due to his race—than other similarly employed staff members in the department. (*Id.* ¶ 17). Plaintiff contends that this was the beginning of a pattern of discrimination by Newton, which included comments

---

[1] Plaintiff did not allege Newton's race.

about white privilege and negative political opinions about white people generally. (*Id.* ¶ 14). For example, while discussing her political views, Newton made a comment to another co-worker that "[t]hese old white men need to die and get out of the way," while gesturing towards Plaintiff. (*Id.* ¶ 21).

On or about April 22, 2015, Plaintiff met with Defendant's Director of the Office of Community Affairs and Human Relations and Chief Service Officer Marcia Goodwin to report Newton's comments. (*Id.* ¶ 25). While Goodwin agreed that Newton should not have made the comments, no action was taken. (*Id.* ¶¶ 27–28). Approximately five days later, Plaintiff e-mailed Administrative Specialist Jennifer Williams to document Newton's conduct. (*Id.* ¶ 29).

On or about July 24, 2015, Plaintiff met with Defendant's Chief of Staff, Frank Billingsley, and Goodwin to discuss the disparity in work and compensation between Plaintiff and his co-workers, Investigators Ron Wilson and Virginia Moore—both of whom are African American. (*Id.* ¶ 30). Specifically, Plaintiff complained of being overworked and underpaid compared to Wilson and Moore. (*Id.*). Billingsley and Goodwin both acknowledged Plaintiff's increased workload and discussed the possibility of creating a new position for him. (*Id.* ¶¶ 31, 34). However, no steps were taken to alter Plaintiff's workload or pay. (*See id.* ¶¶ 34–37).

In August 2015, Plaintiff informed Newton, in confidence, that he was likely to undergo hip replacement surgery. (*Id.* ¶ 39). During the next staff meeting and in front of everyone, Newton stated, "I understand you are planning to have hip replacement surgery. I want you to coordinate the timing of the procedure with me before you make any arrangements with your doctor." (*Id.* ¶ 40). Plaintiff alleges that this was done to harass him. (*Id.*). Plaintiff also claims that he felt compelled to complete the required paperwork to request a leave of absence for fear of being fired, despite the fact that non-white employees regularly fail to do so. (*Id.* ¶ 44; *see id.* ¶ 43). In response

to his request for leave, Goodwin asked Plaintiff a number of personal questions about his health. (*Id.* ¶ 46).

Goodwin initially refused to sign Plaintiff's leave forms and delayed reviewing them. (*Id.* ¶ 47). On or about July 5, 2016, Plaintiff informed Billingsley that he believed Goodwin was discriminating against him regarding his request for leave. (*Id.* ¶ 48). No action was apparently taken, though he was allowed to take leave. (*See id.* ¶¶ 49–50, 55). Before taking leave later that month, Plaintiff was informed by his new supervisor, Gwen Wiggins, that Goodwin asked other staff members for negative comments about Plaintiff for his evaluation. (*Id.* ¶¶ 52–53). Upon returning from leave, Plaintiff discovered that none of his files had been worked on, contrary to Plaintiff's belief that files were to be maintained during a staff member's absence. (*Id.* ¶ 55). On October 17, 2016, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission. (*See Charge of Discrimination*, Doc. 5-2, at 3).

Plaintiff subsequently filed this suit. Plaintiff's Amended Complaint alleges four Counts: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) retaliation in violation of Title VII; (3) intentional infliction of emotional distress; and (4) breach of contract. Defendant moves to dismiss all Counts for failure to state a claim upon which relief can be granted.

## II.     LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a

light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. DISCUSSION

Defendant argues that Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff does not dispute that Counts III and IV of his Amended Complaint should be dismissed. As a result, the Court will not address those Counts and will dismiss them without prejudice. Plaintiff contends, however, that the remaining allegations regarding racial discrimination and retaliation are sufficient to withstand a motion to dismiss.

#### A. Race Discrimination

Plaintiff contends that he has stated a plausible claim of racial discrimination against Defendant in violation of Title VII. "Title VII prohibits employers from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *McCann v. Tillman*,

526 F.3d 1370, 1373 (11th Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)). Under *McDonnell Douglas Corp. v. Green*, Plaintiff bears the initial burden of establishing a prima facie case of race discrimination. 411 U.S. 792, 802 (1973). To state a claim of race discrimination, the plaintiff must establish that: (1) he is a member of a protected class; (2) he experienced an adverse employment action; (3) he received less favorable treatment than a similarly situated person outside of his protected class; and (4) he was qualified for the position. *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

The parties' sole point of contention is whether Plaintiff has sufficiently pleaded that he suffered an adverse employment action. To demonstrate an adverse employment action, "an employee must show a serious and material change in the terms, conditions, or privileges of [his] employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis omitted). "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239.

Plaintiff claims that because of his race, his supervisor assigned him more work than other similarly situated employees and that his work was not maintained while on leave. However, Plaintiff has not alleged that this increase in workload has had any adverse effects on his compensation, work hours, or ability to obtain promotions. *See id.* at 1244–45 (noting that courts "have been reluctant to hold that changes in job duties amount to adverse employment action when unaccompanied by any tangible harm"). Furthermore, "[w]ork assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.* at 1244. "This Court . . . is unwilling to substitute its own judgment for that of . . . Defendant . . . in relation

to Plaintiff's work duties or workload." *McGuire v. Miami-Dade Cty.*, 418 F. Supp. 2d 1354, 1360 (S.D. Fla. 2006) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). Thus, Plaintiff's allegations of increased workload, without more, are insufficient to demonstrate that he suffered an adverse employment action.

Plaintiff further contends that it was inappropriate for Newton to publically disclose his hip replacement surgery and for Goodwin to inquire into the state of his health. To the extent that Plaintiff claims these actions constitute race discrimination, Plaintiff has failed to state a claim. *See Johnston v. Henderson*, 144 F. Supp. 2d 1341, 1359 (S.D. Fla. 2001) (finding that the unauthorized release of confidential medical records, among other things, did not constitute an adverse employment action); *de la Cruz v. Children's Tr. of Miami-Dade Cty.*, 843 F. Supp. 2d 1273, 1283 (S.D. Fla. 2012) (holding in the Family and Medical Leave Act ("FMLA") context that "when an employee takes unforeseeable FMLA leave, inquiries into whether the employee's current condition qualifies for FMLA leave and the expected duration of the leave are reasonable"). Accordingly, construing the facts in the light most favorable to Plaintiff, he has not sufficiently alleged an adverse employment action and, therefore, has failed to state a claim for racial discrimination in violation of Title VII.[2]

### B. Retaliation

Plaintiff also asserts that Defendant retaliated against him for engaging in protected conduct in violation of Title VII. "Title VII's antiretaliation provision forbids employer actions

---

[2] Insofar as Plaintiff asserts a claim for racial discrimination on the basis of unequal pay, he has failed to sufficiently plead facts necessary "to determine whether the employees identified as receiving higher pay qualify as similarly situated comparators." *Benjamin v. Holy Cross Hosp.*, No. 11-62142-CIV, 2012 WL 1900026, at *2 (S.D. Fla. May 24, 2012); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (explaining that a "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer").

that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e–3(a)). To state a claim for retaliation under Title VII, the plaintiff must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the materially adverse action. *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212–13 (11th Cir. 2008).

The parties' only dispute is whether Plaintiff has sufficiently pleaded a materially adverse action. To do so, Plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quotation omitted). Eleventh Circuit precedent establishes that retaliation in the form of an unfavorable performance review, without more, does not constitute a materially adverse action. *See Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 926 (11th Cir. 2014) (noting that "[a]n employment action is 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment"); *cf. Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (finding a materially adverse action where the plaintiff received a negative performance review that affected her eligibility for a pay increase).

Here, Plaintiff's only allegation of retaliation is his negative performance evaluation, which Plaintiff contends was the result of his complaint to Billingsley about Goodwin's discriminatory conduct. Plaintiff does not assert that the performance evaluation had any adverse effects on his employment, such as his ability to obtain a promotion or seek a raise. Construing all the facts in

the light most favorable to him, Plaintiff has not sufficiently pleaded that he suffered a materially adverse action. Therefore, Plaintiff's Amended Complaint does not support a plausible claim for retaliation upon which relief can be granted.

### IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 10) is **GRANTED**.
2. Plaintiff's Amended Complaint (Doc. 5) is **DISMISSED without prejudice**.
3. **On or before February 20, 2018**, Plaintiff may file a Second Amended Complaint.

**DONE** and **ORDERED** in Orlando, Florida on February 6, 2018.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record